NUMBER 13-11-00199-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS

 

                                  CORPUS
CHRISTI - EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



SOUTH
TEXAS TRUSS COMPANY, LLC,                                 Appellant,

 

v.

 

EFRAIN
R. LARA,                                                                          Appellee.

 

 



On appeal from the 444th District Court

of Cameron County, Texas.

 

 



     MEMORANDUM OPINION

 

Before Chief Justice Valdez and Justices Rodriguez
and Garza

Memorandum Opinion by Chief Justice
Valdez

            South Texas Truss Company, LLC (“STTC”), challenges
the trial court’s take-nothing judgment in favor of Efrain R. Lara.[1]  By five issues,
STTC contends that:  (1) the trial court’s “judgment is against the great
weight and preponderance of the evidence”; (2) the trial court applied the
wrong statute; (3) the trial court “erred in finding there was ‘no evidence’ of
[STTC’s] failure to provide [Lara] Notice of [STTC’s] claim by certified mail
and return receipt . . . .”; (4) the trial court’s finding relating
to delivery of the trusses was erroneous; and (5) the trial court abused its
discretion by failing to award attorney’s fees to STTC.  We affirm.

I.          Background

            STTC sued Lara for breach of contract after it
claimed Lara failed to pay for trusses STTC delivered to Lara’s property
located at 1329 Calle Pluton, Brownsville, Texas.  STTC claimed that because
Lara was listed as the owner of the property, he was personally liable for
payment for the trusses.  STTC sought a foreclosure on the property pursuant to
a mechanic’s and materialman’s lien.

            The record shows that Lara’s mother, Maria Gloria
Lara, contracted with Dream Homes to build a house on the Calle Pluton
property.[2] 
The contract with Dream Homes lists Lara and Maria Gloria as the owners of the
property.  However, Lara was not a signatory to the contract with Dream Homes. 
At a bench trial, Maria Gloria testified that she entered the contract with
Dream Homes to build the house and that she paid Dream Homes $26,000 to
complete the work.  According to Maria Gloria, Dream Homes did not complete the
construction of the home.  At trial, Lara claimed that he was a stranger to the
contract with Dream Homes and STTC.

            Frank Klinger, STTC’s authorized representative,
testified that he and a delivery man delivered trusses to 5029 Camellia Drive
in Brownsville, Texas, a property also listed as belonging to Lara.[3]  Klinger stated
that because no one was at the job site when he made the delivery, he did not
get a signature showing that the delivery had occurred.  Klinger then
identified a picture as the property located at 5029 Camellia Drive in Brownsville. 
Klinger stated that he took the picture.  Klinger then pointed out to the trial
court where he believed the trusses had been installed on the property.

As evidence that the trusses were
built and delivered, STTC offered an invoice stating that the ship date was
October 13, 2009, and the total due was $1,874.89.  The invoice is addressed to
Dream Homes and contains the Calle Pluton address and the property’s legal
description.  Klinger claimed that payment was due the day after the trusses
were delivered.  According to Klinger, he attempted to collect the balance due
from Dream Homes by making “numerous calls” to Dream Homes.  Klinger also
claimed that he contacted the owner about the bill.[4]

Klinger testified that while
attempting to locate the owner of the property, he “r[a]n into” Maria Gloria,
and she informed him that she had entered into a contract with Dream Homes to
build a house on the property.  Klinger stated that Maria Gloria showed him her
contract with Dream Homes.  According to Klinger, Maria Gloria had “apparently
given [Dream Homes] a cash payment of $30,000 almost a year prior to the house
being started,” which Klinger thought was “rather strange.”  After talking to
someone at Dream Homes who told Klinger Maria Gloria was responsible for paying
the bill to STTC, Klinger filed a lien on the property.  The trial court
admitted a copy of the lien filed by Klinger.  The lien listed Lara as the
owner of the Calle Pluton property and stated that he was personally liable for
payment of the trusses pursuant to a contract with Dream Homes.  The trial court
admitted an internet printout from the Cameron County Appraisal District
showing that Lara is listed as the titleholder of the Calle Pluton property.

Later on cross-examination, Klinger
stated that the trusses were delivered to “Lot 87, Block A, Colonia Galaxia” on
October 13, 2009.  This is the legal description of the Calle Pluton property. 
However, Klinger admitted that he could not remember the address where the
trusses were delivered.  Klinger stated that he did not have the receipt from
the company that built and delivered the trusses, but he claimed that he paid
for the fabrication of the trusses.

Klinger testified that although he
did not personally receive an order for the trusses, someone at STTC took the
order, and he filled it.  Klinger was not able to identify who it was from
Dream Homes that placed the order for the trusses or who took the order for
STTC.  Klinger simply stated that one of STTC’s sales truss technicians took
the order.  Klinger admitted that STTC did not enter into a contract with Dream
Homes to provide the trusses.[5] 
However, Klinger later stated that the agreement with Dream Homes was verbal. 
Klinger did not enter into that verbal agreement with Dream Homes, and the STTC
representative who allegedly entered into the verbal agreement did not testify
at the bench trial.  Klinger stated that “[t]he agreement [was] that [STTC]
would be paid soon after the materials were delivered.”  However, Klinger
admitted that he did not have any documentation showing that Dream Homes
entered an agreement to pay for the trusses.  Klinger claimed that the invoice
showed the terms of the agreement with Dream Homes.  Klinger explained that he
had no written proof that someone from Dream Homes approved the estimate for
the trusses or authorized the delivery.  Klinger testified that he could not
prove the terms of the agreement with Dream Homes, “Other than the fact that he
[representative from Dream Homes] was sent—he was given that amount before he
approved the order.”  When asked why STTC had not sued Dream Homes, Klinger
stated he did not know and to ask his attorney.

Maria Gloria testified that she
entered into a contract with Dream Homes to build a home on the Calle Pluton
property.  Maria Gloria acknowledged that she received an invoice from STTC
stating that there was an outstanding balance for delivery of the trusses. 
Maria Gloria claimed that she gave the invoice to the representative from Dream
Homes.  On re-direct examination, Maria Gloria stated that she resides at 1329
Pluton.  The trial court admitted a printout from the Cameron County Appraisal
District showing that Maria Gloria owns the property on Camellia Drive.

Lara testified that he understood
that when people entered into an agreement, “they make some kind of form, a
written contract, that way they can back up what they’re saying and how much
the agreement was for.”  According to Lara, in this case, STTC did not have any
proof showing when the parties agreed that payment for the trusses would be
made.  Lara found it unbelievable that someone would “just drop[] off equipment
on the side of the road and just leave.”  Lara stated that he did not enter into
a contract with Dream Homes or with STTC.

During closing argument, STTC
claimed that there is no rule requiring a contract between STTC and Lara. 
However, STTC acknowledged that “[t]here is only a contract or an agreement
between the homeowner and the contractor, which we have as Exhibit No. 1.” 
Lara argued that “there is no signature approving anybody’s decision to
actually make this—these trusses.”  According to Lara, without the agreement,
there is nothing to prove that Dream Homes agreed to the terms as set out in
STTC’s invoice.  Lara reiterated that “[t]here is no contract where somebody
placed the order.  There is no receipt where somebody received the material. 
And it’s in doubt whether the agreement was to pay like they’re saying it was
paid because there is no signature.”

After the bench trial, the trial
court rendered a take nothing judgment in favor of Lara.  At the request of
STTC, the trial court issued the following findings of fact and conclusions of
law:

Findings of Fact

 

1.)        Dream
Homes contracted with Maria [Gloria] Lara to build a home for her at 1329 Calle
Pluton.

 

2.)        Dream
Homes ordered trusses from [STTC].

 

3.)        [STTC]
specially fabricated trusses for Dream Homes on this project.

 

4.)        There was
no contract between [STTC] and Dream Homes.

 

5.)        There is
no delivery address on the Delivery List (Exhibit 1).

 

6.)        Driver
of delivery truck did not know the delivery address and contacted plaintiff
Klinger.

 

7.)        No
one was present at site where trusses were delivered except for driver and
Klinger.

 

8.)        Mr.
Klinger did not know the address the trusses were delivered to.

 

9.)        [Lara]
owns at least two homes in Brownsville.

 

10.)     [Maria
Gloria] Lara did not retain any of the contract prices for the home she
contracted to have built.

 

            . . . .

 

12.)     The
plaintiff[’s] requests for admissions were sent to [Lara] or Maria [Gloria]
Lara regarding trusses in question and were the only documents sent certified
or registered that were introduced in evidence.

 

13.)     Verbal
attempts were made to contact [Lara] and Maria [Gloria] Lara by the plaintiff.

 

14.)     The
notice of lien was filed with Cameron County on the 20th day of the
month following delivery of trusses he fabricated.

 

15.)     There
was never a clear indication as to exactly what home exhibit[] 3 and exhibit[]
4 depicted.

 

Conclusions of Law

 

1.)        Subchapter
K of Chapter 53 of the Property Code applies to Residential construction
projects.

 

2.)        53.251
states that a person must comply with subchapter to perfect a lien that carries
from a claim resulting from a residential construction project.

 

3.)        53.252
states a claimant must give the owner notice by registered or certified mail no
later than the 15th day of the second month following each month in
which all or part of claimants specifically fabricated material was delivered.

 

4.)        53.254
to file a lien on a homestead, the person who is to furnish the material must
execute a written contract setting forth terms of the agreement.

 

5.)        53.056
requires written notice by certified or registered mail to the owner of the
property by the claimant.

 

6.)        As
a result of there being no evidence of certified mail or registered mail giving
notice to [Lara] of the claim the lien was not perfected and thereby invalid.

 

7.)        As
a result of there not being a contract for the trusses the lien on the
homestead is not enforceable.

 

8.)        The
testimony of Mr. Klinger did not establish exactly where the trusses were
delivered because it was unclear.

 

This appeal
followed.

II.         Entitlement
to the Lien

By their first four issues, STTC appears
to argue that STTC proved as a matter of law that it was entitled to a lien on
Lara’s property interest because he was personally liable for payment of the
trusses.[6] 
Lara argues, on the other hand, that because he was not a party to the original
contract between Dream Homes and Maria Gloria, he is not personally liable for
payment of the trusses.  We agree with Lara.

A.        Standard of Review and Applicable Law

Findings of fact in a bench trial
have the same force and effect as findings by the jury.  Anderson v. City of
Seven Points, 806 S.W.2d 791, 794 (Tex. 1991); Pulley v. Milberger,
198 S.W.3d 418, 426 (Tex. App.—Dallas 2006, pet. denied).  If there is any
evidence of a probative nature to support the trial court’s judgment, we will
not set it aside, and if there is any evidence in the record to sustain the
trial court’s findings, we may not substitute our findings of fact for those of
the trial court.  Ray v. Farmers’ State Bank of Hart, 576 S.W.2d 607,
609 (Tex. 1979); Harlingen Irrigation Dist. Cameron County No. 1 v. Caprock
Commc’ns Corp., 49 S.W.3d 520, 529 (Tex. App.—Corpus Christi 2001, pet.
denied).  We review the trial court’s findings of fact by the same standards we
use in reviewing the sufficiency of the evidence supporting a jury’s answers.  Caprock
Commc’ns Corp., 49 S.W.3d at 529.

If a party with the burden of proof
challenges the legal sufficiency of an adverse finding, we must determine
whether the complaining party has demonstrated on appeal that the evidence
establishes, as a matter of law, all vital facts in support of the issue.  Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).   In a
“matter of law” challenge, we “first examine the record for evidence that
supports the finding, while ignoring all evidence to the contrary.”  Id. 
If there is no evidence to support the finding, we will examine the entire
record in order to determine whether the contrary proposition is established as
a matter of law.  Id.  We will sustain the issue if the contrary
proposition is conclusively established.  Id.  The final test for legal
sufficiency must always be whether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review.  City
of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).

“In any foreclosure suit, the
plaintiff must establish the existence of a valid obligation owing to him by
the defendant because foreclosure is merely a method of assuring payment of the
plaintiff’s claim.”  Gibson v. Bostick Roofing & Sheet Metal, 148
S.W.3d 482, 493 (Tex. App.—El Paso 2004, no pet.) (citing Hagan v. Anderson,
506 S.W.2d 298, 302 (Tex. Civ. App.—San Antonio 1973, writ ref’d n.r.e.)).  A
person is entitled to a lien if he furnishes or fabricates materials for the
construction of a house and “the person labors, specially fabricates the
material, or furnishes the labor or materials under or by virtue of a contract
with the owner or the owner’s agent, trustee, receiver, contractor, or
subcontractor.”  Tex. Prop. Code Ann.
§ 53.021 (West 2007).  A lien may not be fixed on an owner’s property “where
the contract for labor, materials or construction is not made with the owner or
his duly-authorized agent.”  Gibson, 148 S.W.3d at 494 (citing Kelly
v. Heimer, 312 S.W.2d 430, 434 (Tex. Civ. App.—San Antonio 1958, writ ref’d
n.r.e.)).  Furthermore, in cases where a contract for materials, labor, or
construction is not made with the owner of the property or his duly-authorized
agent, the owner may not be held personally liable for the materials, labor, or
construction.  Id.  “Our courts have long held that a mechanic’s lien
attaches to the interest of the person contracting for construction.  Thus, if
a lessee contracts for construction, the mechanic’s lien attaches only to the
leasehold interest, not to the fee interest of the lessor.  Similarly, a
mechanic’s lien may attach to an equitable interest of one holding an option on
land, but the lien is extinguished if the fee is not obtained by the
optionee.”  Id. at 495 (citing Diversified Mtg. Investors v. Lloyd D.
Blaylock Gen. Contractor, 576 S.W.2d 794, 805 (Tex. 1978)).

B.        Analysis

            STTC does not challenge the trial court’s
finding of fact that Maria Gloria entered the contract with Dream Homes to
build a home on the Calle Pluton property.  Moreover, this finding is supported
by the evidence admitted at trial.  The only contract admitted shows that Maria
Gloria entered the contract with Dream Homes and that Lara did not sign the
contract.  At no time did STTC contend that Maria Gloria was Lara’s
duly-authorized agent.

            To be entitled to a lien on Lara’s interest in
the property, STTC was required to prove that it provided the trusses under or
by virtue of a contract with Lara or his agent, trustee, receiver, contractor,
or subcontractor.  See Tex. Prop.
Code Ann. § 53.021.  In this case, the evidence established that Lara
did not enter into a contract with Dream Homes to build the home for which STTC
allegedly provided the trusses, and STTC neither alleged nor proved that Maria
Gloria was Lara’s duly-authorized agent.  STTC failed to prove that it provided
the trusses by virtue of a contract with Lara, his agent, trustee, receiver,
contractor, or subcontractor.  Therefore, STTC did not prove as a matter of law
that Lara was personally liable for payment of the trusses and that it was
entitled to a lien on Lara’s interest in the Calle Pluton property.  See Ray,
576 S.W.2d at 609; Harlingen Irrigation Dist. Cameron County No. 1, 49
S.W.3d at 529; see also In re Kellogg Brown & Root, Inc., 166 S.W.3d
732, 741 (Tex. 2005) (providing that a direct contractual relationship is
required between the owner of the property and the mechanic, materialman, or
artisan).  The mechanic’s lien could only attach to the interest of the party
contracting for the labor, materials, or construction—Maria Gloria in this
case.  Accordingly, we conclude that the trial court properly rendered a
take-nothing judgment in favor of Lara.  We overrule STTC’s first four issues.[7]

 

 

III.        Attorney’s Fees

            By its fifth issue, STTC contends that it was
entitled to recover attorney’s fees from Lara.  However, we have concluded that
the trial court properly denied STTC’s cause of action against Lara; therefore,
STTC is not entitled to attorney’s fees.  See Rodgers v. RAB Invs., Ltd.,
816 S.W.2d 543, 551 (Tex. App.—Dallas 1991, no writ) (providing that to obtain
an award of attorney's fees, a party must prevail on a cause of action for
which attorney’s fees are recoverable).  We overrule STTC’s fifth issue.

IV.       Conclusion

            We affirm the trial court’s judgment.

                                                                                                ___________________

Rogelio Valdez

                                                                                                Chief
Justice

 

 

Delivered and filed the 

31st day of August, 2011.

 

 

 









[1]
Lara was pro se at the bench trial and is pro se on appeal.





[2]
There is nothing in the record indicating that STTC sued Maria Gloria or Dream
Homes regarding the trusses.





[3]
Klinger explained that a “truss” is “a prefabricated, engineered product that
is used in the construction of the roof of residential and commercial
property.”





[4]
At this point, Lara interrupted Klinger, and stated, “He never contacted me,
Your Honor.”





[5]
Klinger stated that STTC typically did not enter contracts with “new customers
or one-time builders, if it’s supposed to be a COD or cash
deal . . . .”  Klinger claimed that the deal with Dream
Homes was a “cash deal” in this case.





[6]
STTC does not state whether it challenges the legal or factual sufficiency of
the trial court’s findings of fact.  STTC generally states that the “take
nothing judgment is against the great weight and preponderance of the
evidence”; however, in its prayer, STTC requests that we render judgment in its
favor.  Furthermore, STTC has not stated a standard of review to be applied in
this case.  See Tex R. App. P.
38.1(i).





[7]
Because Lara could not be held personally liable for payment of the trusses in
this case, STTC’s issues regarding whether it provided Lara proper notice of
the bill and whether the trial court erroneously found that notice was required
pursuant to the homestead rules are not dispositive of this appeal.  See Tex. R. App. P. 47.1.